UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
839 CLIFFSIDE AVENUE LLC,

                        Plaintiff,

          -against-

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee for First Franklin Mortgage
Loan Trust 2006-FF3, Mortgage Pass-Through
Certificates, Series 2006-FF3,

                        Defendant.
-------------------------------------------------------------------------x

**MEMORANDUM AND
ORDER**
15-CV-4516 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      By way of Complaint dated August 3, 2015, Plaintiff 839 Cliffside Avenue LLC

("Plaintiff" or "839 Cliffside") commenced this action against Defendant Deutsche

Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust

2006-FF3, Mortgage Pass-Through Certificates, Series 2006-FF3 ("Defendant" or

"Deutsche Bank"), seeking to discharge a mortgage lien encumbering the residential

real property located at 839 Cliffside Avenue, Valley Stream, New York (the "Subject

Property") pursuant to N.Y. Real Prop. Acts. Law § 1501(4). *See* Docket Entry ("DE")

[1].  In its Answer to the Complaint, Deutsche Bank asserted various affirmative

defenses, as well as counterclaims against 839 Cliffside for unjust enrichment and

equitable mortgage.  *See* DE [18].  On September 26, 2016, this Court entered an

Order, *inter alia*, striking Defendant's tenth affirmative defense of equitable

mortgage and dismissing the counterclaim for equitable mortgage.  *See* DE [28].

Deutsche Bank, after obtaining leave of Court, filed an Amended Answer and

Counterclaim (the "AAC") on November 4, 2016, which contained two counterclaims, one for foreclosure and the other for unjust enrichment. *See* DEs [30]-[33], [35]. By Order dated August 25, 2017, this Court dismissed Deutsche Bank's foreclosure counterclaim as time-barred. *See* DE [54]. Subsequently, on September 5, 2018, this Court denied Defendant's motion seeking reconsideration of the August 25, 2017 Order. *See* DE [73].

Presently before the Court are the parties' competing motions for summary judgment.[1] *See* DEs [67], [70]. Deutsche Bank, through its motion, seeks: (i) dismissal of Plaintiff's Complaint on several grounds; and (ii) judgment in its favor on the counterclaims for foreclosure and unjust enrichment. *See* DE [67]. 839 Cliffside, by contrast, requests an order: (i) discharging the mortgage at issue pursuant to N.Y. Real Prop. Acts. Law § 1501(4); (ii) dismissing Deutsche Bank's counterclaims in their entirety; and (iii) awarding Plaintiff reasonable attorneys' fees and costs under N.Y. Real Prop. Acts. Law § 282. *See* DE [70]. For the reasons set forth herein, Defendant's motion is denied in its entirety, and 839 Cliffside's motion is granted in part and denied in part. As explained in further detail below, questions of fact regarding whether Deutsche Bank had possession of the Subject Property at the time this action was commenced preclude summary judgment on either Plaintiff's claim under N.Y. Real Prop. Acts. Law § 1501(4) or Defendant's affirmative defense based on 839 Cliffside's alleged lack of standing. Accordingly, the matter will proceed to trial on the issue of possession.

---

[1] This action has been assigned to this Court for all purposes pursuant to 28 U.S.C. § 636(c). *See* DE [22].

# I. BACKGROUND

## A. <u>Relevant Facts</u>

The following facts are taken from the pleadings, affidavits, exhibits, the Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Def.'s 56.1"), *see* DE [67-31], Plaintiff's Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1(b) ("Pl.'s Counter-Statement"), *see* DE [68-8], Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1"), *see* DE [70-2], and Defendant's Counterstatement of Undisputed Material Facts, *see* DE [71-1]. Unless otherwise noted, these facts are not in dispute.

On or about November 9, 2005, a note (the "Note") was executed in the name of non-party Elmar Polatov ("Polatov") in the original principal amount of $750,000.00 in favor of First Franklin, A Division of National City Bank of Indiana ("First Franklin Indiana"). *See* Def.'s 56.1 ¶ 1; Pl.'s Counter-Statement ¶ 1; Pl.'s 56.1 ¶ 5. The Note was secured by a mortgage (the "Mortgage") on the Subject Property, executed in Polatov's name, in favor of First Franklin Indiana. *See* Def.'s 56.1 ¶ 1; Pl.'s Counter-Statement ¶ 1; Pl.'s 56.1 ¶ 6. Polatov owned the Subject Property as of November 9, 2005 through March 31, 2015. *See* Pl.'s 56.1 ¶ 4.

On March 7, 2006, First Franklin Indiana assigned the Mortgage and Note to First Franklin Financial Corporation ("First Franklin Corp."), which, in turn, assigned the Mortgage and Note to Deutsch Bank on February 1, 2008. *See* Def.'s 56.1 ¶ 2; Affidavit of Cynthia Wallace in Support of Defendant's Motion for Summary Judgment ("Wallace Aff."), DE [67-18], Ex. E. Subsequently, Defendant assigned the

Mortgage and Note to itself c/o Specialized Loan Servicing, Inc. ("SLS") on November 11, 2014. *See id.* From November 9, 2005 through October 1, 2010, the Mortgage and Note were serviced by National City Home Loan Services Inc. a/k/a Home Loan Services, Inc. ("HLS"). *See* Pl.'s 56.1 ¶ 32. On October 1, 2010, HLS effectively merged with Bank of America, N.A. ("BofA"). *See id.* From the date of the merger until March 31, 2014, BofA serviced the Mortgage and Note. *See id.* SLS then replaced BofA as the servicer on April 1, 2014. *See id.* ¶ 33.

Polatov defaulted on the Mortgage and Note on or about October 1, 2007. *See* Def.'s 56.1 ¶ 4. On February 4, 2008, First Franklin Corp. mailed a notice of default to Polatov at the address of the Subject Property. *See id.* ¶ 5. Subsequently, by way of Verified Complaint filed on or about July 1, 2008 (the "State Court Complaint"), Defendant commenced an action in the Supreme Court of the State of New York, County of Nassau, captioned *Deutsche Bank National Trust Company, As Trustee for FFML Trust 2006-FF3, Mortgage Pass-Through Certificates 2006-FF3 v. Elmar Polatov, et al.*, Index No. 12067/2008 (N.Y. Sup. Ct.) (the "State Foreclosure Action"), seeking to foreclose on the Mortgage and Note. *See* Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 19; Declaration of Shane Wax, Esq. ("Wax Decl."), DE [70-3], Exhibit ("Ex.") 1. On or about July 14, 2008, Deutsche Bank caused a copy of the State Court Complaint to be personally delivered to the address of the Subject Property. *See* Pl.'s 56.1 ¶ 27. Two days later, Defendant caused a copy of the State Court Complaint to be mailed to the same address. *See id.* ¶ 28.

Justice Thomas A. Adam entered an Order of Reference on September 25, 2009, and subsequently a Judgment of Foreclosure and Sale on May 20, 2010, in the State Foreclosure Action. *See* Def.'s 56.1 ¶¶ 6, 7; Declaration of Ashley R. Newman ("Newman Decl."), DE [67-1], Exs. 2, 3. By Order dated December 20, 2010, however, Justice Adam vacated his prior Judgment of Foreclosure and Sale and dismissed the State Foreclosure Action without prejudice for lack of personal jurisdiction, pursuant to New York Civil Practice Law and Rules § 3211(a)(8), due to Deutsche Bank's failure to properly effectuate service of process upon Polatov. *See* Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 30; Newman Decl., Ex. 4. Thereafter, Defendant did not assert any foreclosure claims pertaining to the Subject Property, Mortgage, or Note until it filed the AAC—which included a foreclosure counterclaim—on November 4, 2016. *See* Pl.'s 56.1 ¶ 31; DE [35].

According to Deutsche Bank, on June 6, 2011, BofA mailed Polatov a "Notice of Intent to Accelerate" at the address of the Subject Property alleging a total outstanding balance on the loan of $351,873.36. *See* Def.'s 56.1 ¶ 9; Wallace Aff., Ex. G. Defendant further contends that 90-day pre-foreclosure notices pursuant to N.Y. Real Prop. Acts. § 1304 were mailed to Polatov at the address of the Subject Property via certified mail and first-class mail on November 4, 2011, and again on September 4, 2014 at both the address of the Subject Property and Polatov's mailing address, 2630 Ocean Parkway, Apartment F6, Brooklyn, New York. *See* Def.'s 56.1 ¶ 10; Wallace Aff., Ex. H. In addition, Deutsche Bank claims that, on April 9, 2014, SLS

mailed Polatov a letter stating that his loan was in default and that a balance of $1,319,756.36 was due and owing.  *See* Def.'s 56.1 ¶ 11; Wallace Aff., Ex. I.[2]

On August 12, 2014, Polatov commenced an action against Defendant in the Supreme Court of the State of New York, County of Nassau, captioned *Elmar Polatov v. Deutsche Bank National Trust Company, As Trustee for FFML Trust 2006-FF3, Mortgage Pass-Through Certificates 2006-FF3*, Index No. 604178/2014 (N.Y. Sup. Ct.) (the "State Discharge Action"), seeking to discharge the Mortgage.  *See* Def.'s 56.1 ¶ 12; Newman Decl., Ex. 5.  Deutsche Bank claims that, on January 29, 2015, SLS mailed Polatov a Notice of Default and Notice of Intent to Foreclose, via certified mail, at 2630 Ocean Avenue, Apt F6, Brooklyn, New York.[3]  *See* Def.'s 56.1 ¶ 13; Wallace Aff., Ex. J.  On March 31, 2015, following a meeting between Polatov and David Berg ("Berg"), 839 Cliffside's sole member and a partner with the law firm Berg & David PLLC, Polatov and 839 Cliffside executed a hand-written agreement whereby the parties acknowledged, *inter alia*:  (i) that the Subject Property had been transferred to Plaintiff in exchange for the sum of $50,000.00; and (ii) that 839 Cliffside would retain Berg & David PLLC to "litigate the 1st mortgage."[4]  *See* Def.'s 56.1 ¶ 14; Newman Decl., Ex 6; *id.*, Ex. 12, 171:9-172:12.  That agreement further provided that

___

[2] Plaintiff contends that Defendant has failed to submit adequate evidence demonstrating that such notices or letters were properly mailed.  *See* Pl.'s Counter-Statement ¶¶ 9-11.  But because the Court previously dismissed Deutsche Bank's foreclosure counterclaim, it need not address the issue of proper notice.

[3] As with the prior mailings, Plaintiff challenges Defendant's evidentiary showing with respect to the January 29, 2015 notice.  *See* Pl.'s Counter-Statement ¶ 13.

[4] Although the agreement between Polatov and Plaintiff does not define "1st mortgage," *see* Newman Decl., Ex 6, the parties appear to agree, and it is otherwise clear from the record, that this term refers to the Mortgage.

839 Cliffside would remit to Polatov an additional $100,000.00 in the event that the Mortgage is "vacated through litigation." Newman Decl., Ex 6. The transfer of all right, title, and interest in the Subject Property to Plaintiff is further evidenced by a deed recorded with the Nassau County Clerk's Office on April 2, 2015. *See* Pl.'s 56.1 ¶ 40; Def.'s 56.1 ¶ 16; Wax Decl., Ex. 5. One day prior, however, Polatov, through Berg & David PLLC, filed a motion for summary judgment discharging the Mortgage, which the court denied on July 7, 2015. *See* Def.'s 56.1 ¶¶ 15, 16. On July 31, 2015, Polatov moved to discontinue the State Discharge Action based upon his transfer of the Subject Property to 839 Cliffside. The Court granted Polatov's motion to discontinue by Order dated September 18, 2015. *See id.* ¶ 17; Newman Decl., Ex. 9.

For many years before Plaintiff commenced the instant action, the Subject Property was vacant. *See* Pl.'s 56.1 ¶ 3. According to the testimony of BofA employee Michael Watkins ("Watkins"), sometime between October 1, 2010 and April 1, 2014, BofA performed preservation work at the Subject Property by tending to trees and shrubs and draining the pool, and secured the property by changing the locks. *See id.* ¶ 37; Wax Decl., Ex. 8, 100:12-103:19, 105:13-105:16. When SLS began servicing the loan in 2014, it knowingly and voluntarily paid BofA $142,770.74 to cover BofA's previous expenditures on carrying costs, with knowledge that no payments for such costs had been remitted to BofA since at least September 2007. *See* Pl.'s 56.1 ¶ 38. Since April 1, 2014, SLS voluntarily paid an additional $40,000.00 in carrying costs— including approximately $19,000.00 after Polatov transferred ownership of the

Subject Property to 839 Cliffside—with knowledge that Polatov had not made any payments on the Note and Mortgage since 2007. *See id.* ¶¶ 39, 41.

## B. **Procedural History of This Action**

As set forth above, Plaintiff commenced this action against Deutsche Bank seeking to discharge the Mortgage pursuant to N.Y. Real Prop. Acts. Law § 1501(4) by way of Complaint dated August 3, 2015. *See* Complaint, DE [1]. On November 2, 2015, Deutsche Bank filed an Answer, Counterclaim, and Third-Party Complaint in which it asserted various affirmative defenses, counterclaims against 839 Cliffside for unjust enrichment and equitable mortgage, and a third-party claim against Polatov for unjust enrichment. *See* DE [18]. Plaintiff submitted its fully-briefed motion to strike Defendant's third-party claim, dismiss Deutsche Bank's counterclaims, and strike Defendant's affirmative defenses on January 12, 2016. *See* DE [25]. On September 26, 2016, this Court entered an Order striking Defendant's third-party claim and its tenth affirmative defense of equitable mortgage, as well as dismissing the counterclaim for equitable mortgage. *See* DE [28]. On November 4, 2016, after obtaining leave of Court, Defendant filed the AAC, which contained two counterclaims, one for foreclosure and another for unjust enrichment. *See* DEs [30]-[33], [35].

On February 10, 2017, Plaintiff filed a motion to dismiss Deutsche Bank's foreclosure counterclaim and, in the alternative, to dismiss Defendant's counterclaim for unjust enrichment. *See* DE [39]. Defendant opposed the motion. *See* DE [41]. By Order dated August 25, 2017, this Court granted 839 Cliffside's motion and entered

an Order dismissing Deutsche Bank's foreclosure counterclaim as time-barred.[5]  *See*

DE [54] at 6-7.  On September 8, 2017, Defendant moved for reconsideration of this

Court's August 25, 2017 Order on various grounds.  *See* DE [58].  Before this Court

issued a decision on the motion for reconsideration, however, the parties each filed

the instant, fully-briefed motions for summary judgment on February 9, 2018.  *See*

DEs [67]-[72].  Thereafter, by Memorandum and Order dated September 5, 2018, this

Court denied Deutsche Bank's motion for reconsideration, thereby upholding its prior

determination that the foreclosure counterclaim was time-barred.  *See* DE [73].

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears

the burden of establishing that there are no issues of material fact such that summary

judgment is appropriate.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004);

*see Pesola v. City of New York*, No. 15-cv-1917, 2017 WL 3836055, at *2 (S.D.N.Y.

Aug. 31, 2017) ("It is the initial burden of a movant on a summary judgment motion

to come forward with evidence on each material element of his claim or defense,

demonstrating that he is entitled to relief as a matter of law." (citing *Vt. Teddy Bear

Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004))).  In deciding a motion

for summary judgment, the court "is not to weigh the evidence but is instead required

---

[5] With respect to Defendant's unjust enrichment counterclaim, because Plaintiff argued only that such a claim could not be asserted in conjunction with a theory rooted in contract, this Court, having dismissed the contract-based foreclosure counterclaim, concluded that 839 Cliffside's application pertaining to the unjust enrichment counterclaim was moot.  *See* DE [54] at 18.

to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party."). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("[I]ssues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III.  DISCUSSION

Defendant moves for summary judgment dismissing the Complaint on the grounds that:  (i) Plaintiff lacks standing to pursue this action; and (ii) the statute of limitations governing a claim to foreclose upon the Mortgage and Note has not expired.  *See generally* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), DE [67-30].  Deutsche Bank also seeks an Order granting its counterclaims for foreclosure and unjust enrichment.  *See id*.  839 Cliffside, in support of its competing motion for summary judgment, contends that: (i) the statute of limitations on Deutsche Bank's foreclosure counterclaim has expired as a matter of law; and (ii) Defendant's counterclaim for unjust enrichment must be dismissed because the terms of the Mortgage cover the subject dispute, the "voluntary payment doctrine" precludes recovery under this theory, and Plaintiff has not directly benefited at the expense of Defendant.  *See generally* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."), DE [70-1].  Deutsche Bank further seeks an award of attorneys' fees pursuant to N.Y. Real Prop. Acts. Law § 282.  *Id*.  Applying the standards outlined above, and for the reasons set forth below, Defendant's motion is denied in its entirety, and Plaintiff's motion is granted in part and denied in part.  The Court addresses the parties' pertinent arguments in turn below.

### A.  Plaintiff's Standing to Commence the Instant Action

Deutsche Bank asserts, as a threshold matter, that 839 Cliffside lacks standing to pursue this action because:  (i) Defendant was in possession of the Subject Property

when Plaintiff filed its Complaint; (ii) the Subject Property was fraudulently conveyed from Polatov to 839 Cliffside; and (iii) the doctrine of unclean hands voids the transfer of the Subject Property from Polatov to Plaintiff. *See* Def.'s Mem. at 5-16.

### 1. Possession

A party may not file an action to discharge under N.Y. Real Prop. Acts. Law § 1501(4) if the mortgagee is "in possession of the affected real property at the time of the commencement of the action." Though the statute contains no definition of the term "possession," New York courts have interpreted "mortgagee in possession" to mean "'one who has lawfully acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and not claiming under another title, for the purpose of enforcing his security upon such property . . . .'" *City Nat. Bank v. 424 Lafayette Ave LLC*, 30 Misc. 3d 1236(A), 926 N.Y.S.2d 343 (Table) (Sup. Ct. 2011) (quoting Siegel v. Atterbury, 254 A.D. 514, 519, 5 N.Y.S.2d 372, 377 (1st Dep't 1938), *aff'd*, 279 N.Y. 767, 18 N.E.2d 859 (1939)). "Actual possession" connotes the exercise of one's "present right to deal with the [subject] property at pleasure and to exclude other persons from meddling with it." *Sullivan v. Sullivan*, 66 N.Y. 37, 41-42 (1876). "It exists when a thing is in one's immediate occupancy, and it is evidenced by circumstances which vary according to the locality and character of the property." *Town of Oyster Bay v. Jacob*, 109 A.D. 613, 615, 96 N.Y.S. 620, 622 (2d Dep't 1905).

Here, Defendant has failed to establish as a matter of law that it was in "possession" of the Subject Property when 839 Cliffside filed its Complaint such that

the action would be barred under N.Y. Real Prop. Acts. Law § 1501(4). *See City Nat. Bank*, 30 Misc. 3d at 1236(A), 926 N.Y.S.2d at 343 ("The question of whether a mortgagee is a 'mortgagee in possession' is one of fact for the jury." (citing *Barson v. Mulligan*, 191 N.Y. 306, 84 N.E. 75 (1908)). Deutsche Bank, relying on the testimony of Watkins, contends that it had access to the Subject Property to the exclusion of Polatov and all others by virtue of changing the locks in 2010, and, thus, maintained possession since that time. *See* Def.'s Mem. at 6. Defendant also cites to testimony of both Polatov and Berg confirming that Deutsche Bank took actions to secure the Subject Property. *See id.* Given the fact-intensive nature of the possession inquiry, however, the Court cannot conclude based on these circumstances alone that Defendant was in actual possession of the Subject Property at the time Plaintiff commenced this action. Indeed, although Watkins's testimony concerning BofA's actions to secure and attend to the Subject Property is undisputed, Watkins never went so far as to expressly state that BofA took possession of the property. *See* Wax Decl., Ex. 8, 100:22-25 (""I know [BofA] did property preservation work on the property. But does that mean they have possession? I don't know."). Nor has Deutsche Bank submitted any further testimony or other evidence suggesting that the Subject Property was in its "immediate occupancy." *See Jacob*, 109 A.D. at 615, 96 N.Y.S. at 622. Accordingly, questions of fact preclude dismissal of the Complaint pursuant to N.Y. Real Prop. Acts. Law § 1501(4) on the basis that Defendant was in possession of the Subject Property at the time this action was initiated.

2. Fraudulent Conveyance

Deutsche Bank next argues that 839 Cliffside lacks the requisite "interest" in the Subject Property to commence this suit, *see* N.Y. Real Prop. Acts. Law § 1515, because Polatov's transfer of the property to Plaintiff constitutes a fraudulent conveyance. *See* Def.'s Mem. at 6. The Court disagrees.

Pursuant to N.Y. Debt. & Cred. Law § 273, "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debt. & Cred. Law § 273. Moreover, N.Y. Debt. & Cred. Law § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." *Id.* at § 276. Where a deed is fraudulently conveyed, it is null and void. *See Cadle Co. v. Organes Enters., Inc.*, 29 A.D.3d 927, 928, 815 N.Y.S.2d 732, 734 (2d Dep't 2006) ("The plaintiff . . . established its entitlement to judgment as a matter of law declaring that the deed effected a fraudulent conveyance and was null and void."); *Citibank, N.A. v. Plagakis*, 8 A.D.3d 604, 605, 779 N.Y.S.2d 576, 578 (2d Dep't 2004) (holding that a quitclaim deed that "effected a fraudulent conveyance . . . was null and void"). Where a party holds a deed that is null and void as a result of a fraudulent conveyance, it "does not have a real or substantial interest in either the real property or the outcome of [the] litigation." *Plagakis*, 8 A.D.3d at 605, 779 N.Y.S.2d at 578. Notwithstanding the foregoing, "[a]

creditor must have been injured by a conveyance before it may seek to set it aside as fraudulent." *Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 84 (2d Cir. 1992).

Initially, Defendant has failed to establish that it sustained an injury as a result of Polatov's conveyance of the Subject Property to 839 Cliffside, as there is no evidence that the transfer interfered with or otherwise affected Deutsche Bank's security interest in the property. *See Ozzi v. I.R.S.*, No. 88-cv-3353, 1992 WL 37080, at *2 (E.D.N.Y. Feb. 11, 1992) ("When a person purchases property subject to a lien . . . [,] [t]he property is . . . burdened by the lien and its equity value to an owner is reduced by the value of the lien."). Indeed, consistent with the general rule described in *Ozzi*, it is undisputed that Polatov transferred the Subject Property to Plaintiff "subject to" the Mortgage.[6] *See* Def.'s 56.1 ¶ 14; Newman Decl., Exs. 6, 7; *see also Andrews v. Wolcott*, 16 Barb. 21 (Sup.Ct. N.Y. Co. 1852) (holding that a conveyance "subject to" a mortgage "cast on the defendant [transferee] the burden of paying off that mortgage as between [the] mortgagor and its transferee"). Under the terms of the subject agreement, 839 Cliffside paid Polatov $50,000.00 for a property with a value of approximately $300,000.00 through $500,000.00 according to Defendant, *see* Wallace Aff., Ex. K. At that time, however, a debt in excess of $1 million remained due under the Mortgage. *See* Def's 56.1 ¶ 11. Thus, any deprivation of Deutsche

---

[6] Although there is no contract of assumption of the Mortgage, and the deed transferring title to the Subject Property does not explicitly reference the status of the Mortgage, *see* Newman Decl., Ex. 7, the terms of the agreement between Polatov and 839 Cliffside, *id.*, Ex. 6, strongly suggest—and Defendant does not dispute—that the property was conveyed subject to the Mortgage. *See* 5 Tiffany Real Prop. § 1435 (3d ed.) ("If there is no contract of assumption and there is no express statement in the conveyance that it is subject to the mortgage, the question whether it was intended to be so subject must be determined by reference to the circumstances attending the transaction.").

Bank's rights with respect to the Mortgage is attributable only to—as explained in this Court's Memorandum and Order dated September 5, 2018, *see* DE [73]—its failure to timely assert a foreclosure claim, and not to the conveyance itself.[7]

Even if Defendant had sustained an injury as a result of the conveyance, Deutsche Bank has failed to offer sufficient evidence that Polatov transferred the Subject Property with fraudulent intent. "[T]o prove actual fraud under [N.Y. Debt. & Cred. Law] § 276, a creditor must show intent to defraud on the part of the transferor." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (citation and internal quotation marks omitted). Further, "[d]ue to the difficulty of proving intent, plaintiffs may rely on 'badges of fraud'—'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'" *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 745 (E.D.N.Y. 2015) (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir.2005)). The Second Circuit has identified the badges of fraud as follows:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

---

[7] To the extent Deutsche Bank asserts that Polatov transferred the Subject Property in violation of the terms of the Mortgage, a contract-based claim premised on such conduct would be properly asserted against Polatov only. In any event, Defendant has identified no provision of the Mortgage that expressly prohibits Polatov from taking such action. *See* Wallace Aff., Ex. D.

*In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). "[T]hese are matters to be weighed, not elements of a claim—but the presence of multiple badges of fraud lends support to the inference of an intent to defraud creditors, and 'the existence of several badges of fraud can constitute clear and convincing evidence of actual intent.'" *In re USA United Fleet, Inc.*, 559 B.R. 41, 62 (Bankr.E.D.N.Y. 2016) (quoting *In re MarketXT Holdings Corp.*, 376 B.R. 390, 405 (Bankr.S.D.N.Y. 2007)). Generally, "it is the intent of the transferor and not that of the transferee that is dispositive." *Id.* at 87 (quoting *In re Jacobs*, 394 B.R. 646, 658 (Bankr.E.D.N.Y. 2008)). Here, Defendant has offered no evidence of actual intent to defraud on the part of Polatov or otherwise, nor has Deutsche Bank established intent through circumstantial evidence.

According to his deposition testimony, Polatov transferred the Subject Property to Plaintiff "to get [it] off [his] name so [that he could] move on with [his] life[,]" because he did not "want to deal with th[e] headache anymore." Newman Decl., Ex. 12, 20:06-20:09, 119:20-119:24, 165:25-166:05. Such testimony does not constitute evidence of actual intent to defraud. Deutsche Bank further asserts that the existence of various badges of fraud—namely, inadequate consideration, a close relationship between the parties, Polatov's financial condition, and the general chronology of events—provides circumstantial evidence of intent to defraud Polatov's creditors. *See* Def.'s Mem. at 8. As explained below, this argument also lacks merit.

i. Consideration

Under New York law, consideration provided in exchange for property will be deemed fair under two circumstances:

a. When in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property . . . is received in good faith to secure a present advance or antecedent debt in [an] amount not disproportionately small as compared with the value of the property . . . .

N.Y. Debt. & Cred. Law § 272; *see Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 447 (S.D.N.Y. 2014) ("[Section] 272 defines fair consideration to comprise two elements—good faith and the payment of a fair equivalent value for the property interest conveyed."). "In broad terms, good faith 'is lacking where there is a failure to deal honestly, fairly, and openly.'" *Chen*, 8 F. Supp. 3d at 448 (quoting *Sardis v. Frankel*, 113 A.D.3d 135, 143, 978 N.Y.S.2d 135, 142 (1st Dep't 2014)). More specifically, "[g]ood faith may be deemed to be lacking if there is no 'honest belief in the propriety of the activities in question,' or if there is 'knowledge of the fact that the activities in question will hinder, delay, or defraud others.'" *Id.* (quoting *S. Indus., Inc. v. Jeremias*, 66 A.D.2d 178, 183, 411 N.Y.S.2d 945, 949 (2d Dep't 1978)). Moreover, "[t]o show fair equivalent value, neither mathematical precision nor a penny-for-penny exchange is required." *Allstate Ins. Co. v. Mirvis*, No. 08-cv-4405, 2017 WL 3981157, at *4 (E.D.N.Y. July 31, 2017), *report and recommendation adopted*, 2017 WL 3981297 (E.D.N.Y. Sept. 8, 2017), *and report and recommendation adopted*, 2017 WL 6029128 (E.D.N.Y. Dec. 5, 2017). "[T]he party asserting the claim

of fraudulent conveyance bears the burden of establishing the element of unfair consideration[,]" and "[w]hat constitutes fair consideration . . . must be determined upon the facts and circumstances of each particular case." *United States v. McCombs*, 30 F.3d 310, 323 & 326 (2d Cir. 1994).

Here, Deutsche Bank has failed to demonstrate that the consideration provided to Polatov by 839 Cliffside for the Subject Property was unfair. With respect to fair equivalent value, Defendant offers inadequate evidence to establish the Subject Property's market value at the time of the transfer. Deutsche Bank submits only appraisals obtained in September 2016 and February 2017 valuing the Subject Property in "as-is" condition at $325,000.00 and $465,000.00, respectively, *see* Wallace Aff., Ex. K. Such documents, however, are neither admissible, *see* Fed. R. Evid. 801(c), nor probative of the Subject Property's value for purposes of the present inquiry, *see In re Tesmetges*, 85 B.R. 683, 697 (Bankr.E.D.N.Y. 1988) ("The relevant date for determining fairness of consideration is the date of the transfer."). Thus, without knowing the value of the Subject Property at the time it was transferred, the Court is unable to opine as a matter of law on the adequacy of consideration provided. But even assuming that the Subject Property's value were, as Deutsche Bank suggests, in the $300,000.00 through $500,000.00 range, the Court would deem Plaintiff's $50,000.00 payment to Polatov sufficient for the simple reason that Polatov held no equity in the property at the time of the transfer. *Cf. United States v. Alfano*, 34 F. Supp. 2d 827, 847 (E.D.N.Y. 1999) ("Assumption of [a] mortgage debt may constitute fair consideration[ ] where . . . the debt assumed nearly approaches the

19

relative value of the property [.] . . .”); *Ozzi*, 1992 WL 37080, at *2 (E.D.N.Y. Feb. 11, 1992). Therefore, as any amount of consideration would be sufficient under the circumstances, the Court concludes that 839 Cliffside's payment satisfies the fair equivalent value requirement.

Defendant likewise cannot meet its burden to show bad faith. In an attempt to describe Polatov and Berg's purportedly nefarious motive underlying the conveyance, Deutsche Bank explains that "Polatov was seeking legal advice from . . . Berg, who, with knowledge of . . . Polatov's substantial debt on the Mortgage, purchased the [Subject] Property for the express purpose of trying to avoid . . . Polatov's creditor, resulting in a windfall to Plaintiff." Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), DE [69], at 6. Defendant underscores Berg's testimony that, when 839 Cliffside purchased the Subject Property, "the actual appraised value had no relevance to [his] desire to purchase it . . . ." *See* Newman Decl., Ex. 14, 63:15-16. Defendant insists, relying on this testimony, that the conveyance was fraudulent, since "Plaintiff purchased the [Subject] Property with the *specific intent* of trying to discharge the Mortgage such that Defendant would not be able to recover the monies owed to it." Def.'s Reply at 6 (citation omitted) (emphasis in original). But Defendant offers no evidence that Polatov or Berg either questioned the propriety of their arrangement or knew that the transfer would hinder, delay, or defraud others. Nor does Deutsche Bank provide any legal support for the proposition that Polatov's assignment of the Subject Property to Plaintiff was somehow unlawful. As explained above, it was not

the transfer of the Subject Property, but instead the running of the statute of limitations, that hindered Defendant's ability to enforce its interest in the Subject Property. Deutsche Bank also alleges that 839 Cliffside's lack of good faith in purchasing the property is evidenced by a New York State Department of Taxation and Finance "Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certificate, and Certification of Exemption from the Payment of Estimated Personal Income Tax" (the "Combined Real Estate Transfer Tax Return") signed by Plaintiff, which identifies the amount of consideration for the conveyance as $495,000.00. *See* Newman Decl., Ex. 16. But absent any further articulation of this argument or other explanation regarding how this figure was calculated, the Court will not infer bad faith under the circumstances.

Accordingly, the Court having found insufficient evidence that Plaintiff and Polatov acted in bad faith and that 839 Cliffside's payment for the Subject Property was not a fair equivalent value, Defendant has failed to meet its burden to show lack of fair consideration.

### ii. Financial Condition of Polatov

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his [or her] existing debts as they become absolute and matured." *Battlefield Freedom Wash, LLC v. Song Yan Zhuo*, 148 A.D.3d 969, 971, 51 N.Y.S.3d 527, 529 (2d Dep't 2017) (citation omitted). "In general, the burden of proving insolvency is on the party challenging the conveyance." *Id.* (citation omitted). "However, when a transfer is

made without fair consideration, a presumption of insolvency and fraudulent transfer arises, and the burden shifts to the transferee to rebut that presumption." *Id.* (citation omitted). Because the Court has concluded that the subject conveyance was made with fair consideration, Defendant bears the burden of establishing Polatov's insolvency. In an effort to make its required showing, Deutsche Bank relies solely upon: (i) Polatov's testimony that, at the time of the transfer, he "was not doing good" and was "financially distressed," and that he was "still in debt" on the date of his deposition, *see* Def.'s Mem. at 11; and (ii) Berg's testimony that Polatov's "credit's been shot now," *see id.* Defendant has, however, submitted no evidence that, either before or after the conveyance, "the present fair salable value of [Polatov's] assets [was] less than the amount that will be required to pay his probable liability on his . . . existing debts as they become absolute and matured." *Battlefield Freedom*, 148 A.D.3d at 971, 51 N.Y.S.3d at 529. Accordingly, Deutsche Bank has not met its burden to show Polatov's insolvency. *See Morgan Guar. Tr. Co. v. Hellenic Lines Ltd.*, 621 F. Supp. 198, 220 (S.D.N.Y. 1985) ("Cash flow is not a factor, and an 'inability to pay current obligations as they mature does not show insolvency.'" (quoting *McCarty v. Nostrand Lumber Co.*, 232 A.D. 63, 65, 248 N.Y.S. 606, 607 (2d Dep't 1931))).

### iii. Relationship Between the Parties

Defendant's assertion that Polatov's close relationship with Plaintiff and Berg suggests fraudulent intent in connection with the subject conveyance is likewise unavailing. The gravamen of Deutsche Bank's argument is that the transaction should be presumed void based on the fiduciary relationship between Polatov and

Berg, together with Polatov's position of financial weakness. Specifically, Defendant notes that Polatov met with Berg in March 2015 to obtain legal advice regarding the Subject Property when Polatov was experiencing serious financial hardship. *See* Def.'s Mem. at 10. Further, Deutsche Bank points out that "[i]n this vulnerable position, the very same transaction in which . . . Polatov agreed to retain [Berg & David PLLC] to represent him in the State Discharge Action, he also agreed to transfer the [Subject] Property to Plaintiff (*i.e.*, Mr. Berg), for the meager sum of $50,000.00." *Id.* Defendant also questions Berg's failure to disclose his interest in the Subject Property in the context of the State Court Action. *See id.*

Deutsche Bank is correct that "[o]nce a fiduciary relationship is found to exist between two parties, 'transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake or undue influence.'" *In re Mazak*, 288 A.D.2d 682, 684, 732 N.Y.S.2d 707, 709 (3d Dep't 2001) (quoting *Gordon v. Bialystoker Ctr. & Bikur Cholim, Inc.*, 45 N.Y.2d 692, 698, 412 N.Y.S.2d 593, 597 (1978)). Moreover, "if one party deals with another from a position of . . . weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood." *Id.* Nevertheless, here, Plaintiff has presented evidence demonstrating that Polatov fully understood the nature of the transaction. Indeed, according to Polatov's

uncontroverted testimony, at the time he executed the subject agreement with 839 Cliffside he was represented by separate counsel, who had been referred to him by a friend. *See* Newman Decl., Ex. 12, 176:12-178:8. Though the agreement does indicate that 839 Cliffside paid Polatov's counsel fee of $750.00, there is no evidence in the record indicating that Polatov was uninformed or coerced, or that Berg somehow took advantage of his fiduciary relationship with Polatov. Thus, Plaintiff has sufficiently rebutted any presumption that the transaction was void by demonstrating that it was fair, open, voluntary and well understood. In addition, the sworn statement submitted by Berg in opposition to Defendant's motion provides, among other things, that he "never had any conversations or relationship with Polatov, either in [his] capacity as managing member of Plaintiff or in [his] capacity as member of Berg & David, until just prior to the March 31, 2015 closing" and "has no ongoing business or informal relationship with Polatov." Declaration of David Berg, Esq., DE [68-7], ¶¶ 7, 9. Berg also attests that Polatov "has never had any direct or indirect involvement or interest in Plaintiff" and that "Berg & David did not represent Elmar Polatov in any litigation . . . until after Plaintiff acquired the [S]ubject [P]roperty." *Id.* ¶¶ 9, 10. Thus, taking all circumstances into account, the Court finds no basis to question the propriety of Polatov's relationship with 839 Cliffside.

### iv. Chronology of Events

Finally, the Court disagrees with Defendant's contention that "the general chronology of events and transactions demonstrates that the transfer of the [Subject] Property to Plaintiff was fraudulent." Def's Mem. at 12. Deutsche Bank, in support

of its assertion, highlights the following: (i) 839 Cliffside was registered with the New York Department of State one day before the conveyance; (ii) Plaintiff's registered address is the same address as that of its counsel; (iii) the funds paid to Polatov for the Subject Property came from Berg and his wife's personal bank account; (iv) Polatov was not properly represented by counsel when he executed the agreement with 839 Cliffside; (v) the Combined Real Estate Transfer Tax Return identifies the consideration paid for the Subject Property as $495,000.00; (vi) Berg & David PLLC failed to disclose its interest in the Subject Property upon representing Polatov in the State Discharge Action; (vii) Polatov's transfer of the Property violated the terms of the Mortgage; and (viii) Polatov stopped paying the Mortgage approximately two years after obtaining the loan. *See* Def.'s Mem. 12-14. But in reciting this laundry-list of events and circumstances that it deems questionable, Defendant fails to articulate how any of the conduct enumerated, either individually or collectively, raises an inference that the transfer was effectuated for the purpose of defrauding Polatov's creditors. Importantly, as Plaintiff points out, Polatov was neither a defendant in a lawsuit nor subject to any monetary judgment at the time of the transfer. *See* Pl.'s Opp. at 9. Nor is there evidence that Polatov retained control of the Subject Property after the conveyance. *See id.* Thus, the chronology of events here lends no support to Deutsche Bank.

For all of the reasons described above, the Court concludes that that Defendant has failed to demonstrate that Polatov's transfer of the Subject Property was fraudulent under N.Y. Debt. & Cred. Law § 276. Further, given the Court's

conclusion that Plaintiff provided Polatov fair consideration in exchange for the Subject Property, Deutsche Bank also has not established a fraudulent conveyance pursuant to N.Y. Debt. & Cred. Law § 273.

### 3. Unclean Hands

As for its final standing-based argument, Defendant asserts that this action is barred due to Plaintiff's unclean hands because:  (i) Berg did not disclose his proprietary interest in the outcome of the State Discharge Action; (ii) 839 Cliffside purchased the Subject Property for far less than its value; and (iii) Berg had the specific intention to discharge the Mortgage and avoid Polatov's creditors when he purchased the Subject Property, thereby resulting in a windfall to Plaintiff.  *See* Def.'s Mem. at 15-16.  These arguments are redundant and also lack merit.  The doctrine of unclean hands "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  *ABF Freight Sys., Inc. v. Nat'l Labor Relations Bd.*, 510 U.S. 317, 329, 114 S. Ct. 835, 842 (1994); *see also City of New York v. Fedex Ground Package Sys., Inc.*, 314 F.R.D. 348, 356-57 (S.D.N.Y. 2016) ("[U]nclean hands prohibits awarding equitable relief to a party that has acted fraudulently or deceitfully to gain an unfair advantage.").  However, the doctrine "applies only where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that [plaintiff] seeks in respect to the matter in litigation.'"  *Specialty Minerals, Inc. v. Pluess–Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S.

240, 245, 54 S. Ct. 146, 147 (1933)). It is well-established that "an unclean hands defense requires a finding of bad faith." *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001). Moreover, "under New York law, to assert a defense of unclean hands, a party must have been injured by the allegedly inequitable conduct." *Id.*

The Court has already determined that neither Plaintiff nor Polatov acted in bad faith by engaging in the transaction at issue and that Deutsche Bank did not sustain an injury as a result of the allegedly inequitable conduct. Thus, Defendant's unclean hands defense independently fails for each of these reasons. Further, Deutsche Bank has not demonstrated that any of the conduct raised in support of its unclean hands defense is unlawful or otherwise inequitable. For instance, Deutsche Bank identifies no legal support for its argument that Berg violated Rule 1.8 of the New York Rules of Professional Conduct—which provides that "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client," N.Y. Rules Prof'l Conduct R. 1.8(i)—by purchasing the Subject Property while the State Discharge Action was pending. In addition, as explained at length above, 839 Cliffside acquired the Subject Property subject to the Mortgage and, thus, actually paid Polatov more than the property's net value at the time. Similarly, Plaintiff did not receive a windfall as a result of the transfer because, in acquiring the Subject Property, 839 Cliffside undertook the risks and burdens associated with litigating the action seeking to discharge the Mortgage. Accordingly,

Defendant has failed to establish that Plaintiff lacks standing as a result of unclean hands.[8]

## B. **Plaintiff's Claim Under N.Y. Real Prop. Acts. Law § 1501(4)**

Both Defendant and 839 Cliffside seek summary judgment on Plaintiff's sole claim, which seeks to discharge the Mortgage. N.Y. Real Prop. Acts. Law § 1501 provides, in relevant part, as follows:

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons, known or unknown, . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom; provided, however, that no such action shall be maintainable in any case where the mortgagee . . . shall be in possession of the affected real property at the time of the commencement of the action.

N.Y. Real Prop. Acts. Law § 1501(4). Under New York law, an action to foreclose a mortgage is subject to a six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(4). "Generally, when a mortgage is payable in installments, causes of action accrue separately for each installment that is not paid, and the statute begins to run from the respective due date for each installment." *Zucker v. HSBC Bank*, USA, No. 17-cv-2192, 2018 WL 2048880, at *5 (E.D.N.Y. May 2, 2018) (citing *Phoenix Acquisition Corp. v. Campcore, Inc.*, 81 N.Y.2d 138, 140-41, 596 N.Y.S.2d 752, 753 (1993); *Wells*

---

[8] Though this Court noted in its Memorandum and Order dated September 26, 2016 that the sequence of events surrounding the transfer of the Subject Property "supports the invocation of the unclean hands defense[,]" the Court proceeded to clarify that the facts pled merely "raise a plausible inference that 839 Cliffside acted with unclean hands in obtaining title to the Subject Property" sufficient to defeat a motion to strike. *See* DE [28] at 29-30. Defendant's reliance on this conclusion in support of its motion for summary judgment, *see* Def.'s Mem. at 15, is therefore misplaced.

*Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982, 943 N.Y.S.2d 540, 542 (2d Dep't 2012)). "However, even if a mortgage is payable in installments, if the mortgage debt is accelerated, the entire amount becomes due and subject to a single six-year statute of limitations." *Id.* (citing *Burke*, 94 A.D.3d at 982, 943 N.Y.S.2d at 542).

By virtue of its Order dated August 25, 2017 and its Memorandum and Order dated September 5, 2018, this Court determined as a matter of law that the statute of limitations for the commencement of an action to foreclose upon the Mortgage expired on July 1, 2014. *See* DEs [54], [73]. The Court deems this conclusion law of the case, as Deutsche Bank has offered no compelling reason to revisit the prior ruling.[9] *See Jie Zhang v. Wen Mei, Inc.*, No. 14-cv-1647, 2017 WL 8813132, at *7 (E.D.N.Y. Dec. 28, 2017), *report and recommendation adopted*, 2018 WL 878988 (E.D.N.Y. Feb. 14, 2018) ("The law of the case doctrine provides that 'when a court has ruled on an issue that decision should generally be adhered to by that court in subsequent stages in the same case.'" (quoting *U.S. v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009))); *United States v. Catholic Health Sys. of Long Island Inc.*, No. 12-cv-4425, 2018 WL 3825906, at *5 (E.D.N.Y. Aug. 10, 2018) ("A court should . . . be 'loathe to revisit an earlier decision in the absence of extraordinary circumstances . . . .'" (quoting *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d

---

[9] The Court acknowledges the general principle that "the statute of limitations will not run against a mortgagee in possession" because "the mortgagor's acquiescence to that possession is a continuing acknowledgment of the debt." *LaPlaca v. Schell*, 68 A.D.3d 1478, 1479, 892 N.Y.S.2d 244, 245 (2009). The instant case is distinguishable from *LaPlaca*, however, because Defendant has offered no evidence that Polatov had knowledge of or acquiesced to its alleged possession of the Subject Property. Hence, the Court is able to reconcile its dismissal of Defendant's foreclosure counterclaim with its finding here that questions of fact remain regarding who, if anyone, possessed the Subject Property for purposes of N.Y. Real Prop. Acts. Law § 1501(4).

Cir. 1995))). Thus, Defendant's motion is denied with respect to this issue. Nevertheless, although Plaintiff has an interest in the Subject Property as demonstrated by the recorded deed, as explained in section III(A)(1), questions of fact remain regarding whether Defendant possessed the Subject Property at the time 839 Cliffside commenced this action.[10] For this reason, the Court likewise denies summary judgment on Plaintiff's claim for discharge under N.Y. Real Prop. Acts. Law § 1501(4).

### C. Defendant's Unjust Enrichment Counterclaim

Given that Defendant's foreclosure counterclaim has been dismissed, the Court turns to the parties' respective arguments pertaining to Deutsche Bank's counterclaim for unjust enrichment, asserted in the alternative, seeking to recover for payments it made for taxes, insurance, and water on the Subject Property. Defendant contends that it is entitled to judgment as a matter of law on this counterclaim. *See* Def.'s Mem. at 24-25. Plaintiff, however, cross-moves for summary judgment on the grounds that: (i) the payments at issue were governed by a written contract (the Mortgage); (ii) the voluntary payment doctrine precludes recovery under this theory; and (iii) the payments at issue were not made by Deutsche Bank. *See* Pl.'s Mem. at 17-21.

---

[10] Pursuant to Fed. R. Civ. P. 60, this Court now vacates its Order dated August 25, 2017, only insofar as it concluded that the Mortgage was extinguished. *See* DE [54] at 15. That specific relief is sought in Plaintiff's cause of action under N.Y. Real Prop. Acts. Law § 1501(4), and, as explained above, the viability of that claim remains uncertain at this juncture.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *see Bank of Am., N.A. v. NMR Realty Abstract Servs., Ltd.*, No. 12-cv-797, 2014 WL 3585716, at *5 (E.D.N.Y. Jan. 2, 2014) ("The essence of an unjust enrichment claim is that one party has received money or a benefit at the expense of another." (internal quotation omitted)). "Simply claiming that the defendant received a benefit is insufficient to establish a cause of action for unjust enrichment[.]" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) (citation omitted); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ("[A] specific and direct benefit [is] necessary to support an unjust enrichment claim."). Moreover, "[t]he services performed must not have merely benefited the enriched party, but must have been performed at its behest." *Wilson v. Dantas*, No. 12-cv-3238, 2013 WL 92999, at *7 (S.D.N.Y. Jan. 7, 2013); *see also Carruthers v. Flaum*, 388 F. Supp. 2d 360, 371 (S.D.N.Y. 2005) (dismissing claim for unjust enrichment where the plaintiffs "advanced . . . funds for their own benefit and perhaps the benefit of their business partners").

It is well-settled that "[a] cause of action for unjust enrichment sounds in quasi-contract and cannot lie where an enforceable contract governs the disputed matter." *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014); *see Beth Israel*, 448 F.3d at 586 ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement."); *MGR*

*Meats, Inc. v. Schweid*, No. 10-cv-3068, 2012 WL 6675123, at *6 (E.D.N.Y. Dec. 21, 2012) ("[W]hen a valid contract exists that covers the subject of the dispute, even if the defendant was not a party to the contract, a plaintiff is precluded from bringing a claim for unjust enrichment, because the focus of the inquiry is not on the parties to the contract but the subject of the contract."). The voluntary payment doctrine likewise bars recovery under an unjust enrichment theory, but only where "payments [are] voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law.'" *Leder v. Am. Traffic Sols., Inc.*, 630 F. App'x 61, 63 (2d Cir. 2015) (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526, 760 N.Y.S.2d 726, 727 (2003)); *see Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) ("The voluntary payment doctrine precludes a plaintiff from recovering payments 'made with full knowledge of the facts' and with a 'lack of diligence" in determining his contractual rights and obligations." (quoting *Dillon v. U–A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 740 N.Y.S.2d 396, 397 (2d Dep't 2002)); *see also Wells Fargo Bank, N.A. v. Burke*, 155 A.D.3d 668, 671, 64 N.Y.S.3d 228. 232-33 (2d Dep't 2017) (dismissing mortgagee's unjust enrichment claim seeking recovery for real estate taxes and insurance costs, characterizing such payments as "voluntary, calculated risk[s] to protect the plaintiff's interest in the property while it continued to litigate the validity of the mortgage, rather than the product of mistake or fraud"). Here, Deutsche Bank's unjust enrichment counterclaim is barred both because the terms of the Mortgage govern the escrow payments at issue and under the voluntary payment doctrine.

As Defendant admits in its AAC, the terms of the Note permit Deutsche Bank or its servicer to advance carrying costs for the Subject Property, which are deemed secured by the Mortgage. *See* AAC ¶ 12. Further, the Mortgage requires Polatov to "pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, . . . [and] hazard or property insurance covering the [Subject] Property[ ] . . . [,]" which are identified as "Escrow Items." Wax Decl., Ex. 4 § 3(a). In the event that Polatov fails to do so, the Mortgage permits Defendant to pay such amounts and do whatever is reasonable and appropriate to protect its interest in the Subject Property. *See id.* §§ 3(a), 4, 9. Under such circumstances, the Mortgage further obligates Polatov to pay any amounts, with interest, that Deutsche Bank spends on Escrow Items. *See id.* § 9. It is thus indisputable that the Mortgage governs the matter in dispute, namely, the payments Defendant made for taxes, insurance, and water on the Subject Property.[11] Accordingly, Deutsche Bank's unjust enrichment counterclaim is dismissed.

In addition, the voluntary payment doctrine likewise precludes Defendant's unjust enrichment claim. Here, as in *Burke*, Deutsche Bank voluntarily remitted the payments for escrow items under the terms of the Note and Mortgage. And Defendant continued to do so notwithstanding Polatov's default. The Court deems Deutsche Bank's election to make such payments "a voluntary, calculated risk" to

---

[11] Defendant argues that "Plaintiff cannot both dispute the validity of the Mortgage contract for purposes of Defendant's foreclosure counterclaim, while also claiming that the Mortgage is valid and bars Defendant's unjust enrichment claim for escrow advances." Def's Opp. at 13. However, in seeking to discharge the Mortgage, 839 Cliffside does not dispute the validity of the Mortgage, but rather attempts to assert its rights under N.Y. Real Prop. Acts. Law § 1501(4). Accordingly, Deutsche Bank's argument is unfounded.

protect its interest in the Subject Property.[12]  Moreover, there is no indication that

the payments were the product of mistake or fraud.  Thus, Defendant's unjust

enrichment counterclaim is dismissed on this independent basis as well.

**D. <u>Attorneys' Fees and Costs</u>**

Finally, the Court turns to Plaintiff's request for an award of attorneys' fees

and costs.  N.Y. Real Prop. Law § 282 provides:

> Whenever a covenant contained in a mortgage on residential real
> property shall provide . . . in any action or proceeding to foreclose the
> mortgage that the mortgagee may recover attorneys' fees and/or
> expenses incurred as the result of the failure of the mortgagor to perform
> any covenant or agreement contained in such mortgage, or that amounts
> paid by the mortgagee therefor shall be paid by the mortgagor as
> additional payment, there shall be implied in such mortgage a covenant
> by the mortgagee to pay to the mortgagor the reasonable attorneys' fees
> and/or expenses incurred by the mortgagor as the result of the failure of
> the mortgagee to perform any covenant or agreement on its part to be
> performed under the mortgage or in the successful defense of any action
> or proceeding commenced by the mortgagee against the mortgagor
> arising out of the contract, and an agreement that such fees and
> expenses may be recovered as provided by law in an action commenced
> against the mortgagee or by way of counterclaim in any action or
> proceeding commenced by the mortgagee against the mortgagor.

N.Y. Real Prop. Law § 282.

As a preliminary matter, it is undisputed that the Subject Property is

residential real property.  Moreover, the Mortgage authorizes Deutsche Bank to

commence a foreclosure proceeding and provides Defendant the right to collect costs

and reasonable attorneys' fees.  *See* Wax Decl., Ex. 4 § 22.  And, in light of this Court's

Order dated August 25, 2017 dismissing Deutsche Bank's foreclosure counterclaim,

---

[12] Deutsche Bank's argument that it remitted payment for the escrow items "to ensure the [Subject] Property did not become a blight upon the neighborhood[,]" Def.'s Opp at 15, is wholly unsupported and therefore rejected.

together its Memorandum and Order dated September 5, 2018 re-affirming that decision, it is without question that Plaintiff successfully defended an action arising from the Mortgage. Defendant identifies no legal basis for its contention that the term "mortgagor," as used in the statute, covers only Polatov (the original borrower) and not Plaintiff (an assignee). Accordingly, 839 Cliffside has established its right to collect attorneys' fees under N.Y. Real Prop. Law § 282 as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is denied in its entirety. Specifically, the Court declines to grant summary judgment on Deutsche Bank's counterclaim for unjust enrichment, rejects its argument that dismissal of Plaintiff's N.Y. Real Prop. Acts. Law § 1501(4) claim is warranted at this juncture, and rejects its standing-based defenses premised upon the theories of fraudulent conveyance and unclean hands. Defendant's standing defense remains viable, however, because questions of fact exist regarding whether it was in possession of the Subject Property at the time 839 Cliffside commenced this action. For this reason, the Court also denies Plaintiff's request for summary judgment on its claim under N.Y. Real Prop. Acts. Law § 1501(4). Nevertheless, the Court grants 839 Cliffside summary judgment dismissing Deutsche Bank's counterclaim for unjust enrichment and declaring Plaintiff's entitlement to attorneys' fees and costs. A status conference to address all remaining issues in this matter is set for October 30, 2018 at 10:00 a.m. in courtroom 820 of the Central Islip courthouse.

Dated: Central Islip, New York
      September 25, 2018

**SO ORDERED**

  s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge